IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK S. BAREFOOT, | ) Civ. No. 07-00456 ACK-KSC |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF NAVY, UNITED STATES OF AMERICA; AND DOE DEFENDANTS 1-20, | ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

### BACKGROUND

Mark S. Barefoot ("Plaintiff") has been employed by the Department of the Navy ("Navy") as a civilian police officer since August 1996.  On April 13, 2005, pursuant to the Navy's request, Plaintiff was tested for drugs by either Lab One, Inc. or Northwest Toxicology.  Plaintiff's urine tested positive for marijuana.

On April 15, 2005, Plaintiff underwent a second drug test conducted by the Veteran's Administration.  The results of that test were negative.  On May 5, 2005, the results of Plaintiff's first drug test were faxed to the Navy.

On May 9, 2005, the Navy informed Plaintiff of the positive test results.  When Plaintiff reviewed the first toxicology report, he noticed that the social security number on

1

the report was inaccurate and that the signature on the report did not belong to him.

On August 31, 2005, the Department of the Navy Central Adjudication Facility ("DON CAF") placed Plaintiff on indefinite suspension.[1]  Plaintiff attempted to appeal his suspension to the Merit Systems Protection Board ("MSPB") but was told on more than one occasion that instead of filing his grievance with the MSPB, he should instead file with the Personnel Security Appeals Board or the Defense Office of Hearings and Appeals.

On November 1, 2005, Plaintiff sent a letter to the DON CAF contesting the revocation of his security clearance.  On January 26, 2006, the DON CAF rendered a final order revoking Plaintiff's security clearance.

Plaintiff appealed the DON CAF's decision. On November 13, 2006, Administrative Judge Richard A. Cefola of the Defense Office of Hearings and Appeals recommended reinstatement of Plaintiff's security clearance and eligibility for assignment to sensitive positions in the Navy.  On November 16, 2006, the Navy notified Plaintiff of his reinstatement.

On August 29, 2007, Plaintiff filed a complaint ("Complaint") in this Court against the Navy, United States of

---

[1] In his Supplemental Memorandum in Support of the Opposition ("Supplemental Opposition") Plaintiff contradicts this allegation by asserting that in fact he was suspended on July 30, 2005.

2

America and Doe Defendants 1 - 20 ("Defendants") alleging: (1) wrongful suspension; (2) wrongful revocation of his security clearance; (3) negligence; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) libel; and (7) slander.

On February 8, 2008, Defendants filed a motion to dismiss ("Motion").  On March 20, 2008, Plaintiff responded by filing a Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition").  On March 26, 2008, Defendants filed a Reply to Plaintiff's Opposition to the Defendants' Motion to Dismiss.

On April 7, 2008, the Court held a hearing on the Motion.  At the hearing, the Court ordered the parties to file supplemental briefs to clarify three issues: (1) whether the MSPB has jurisdiction to consider Plaintiff's claim for back pay and other damages he suffered as a result of his indefinite suspension; (2) whether any statute of limitations would bar Plaintiff from raising a claim for relief with the MSPB; and (3) whether the Court has authority to affect the MSPB's consideration of the two preceding issues.

On April 18, 2008, Plaintiff filed his Supplemental Opposition.  On April 25, 2008, Defendants filed a Supplemental Memorandum in Support of the Motion to Dismiss ("Supplemental Memorandum").

## STANDARDS OF REVIEW

**I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party [converts] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

"The requirement that the nonmoving party present evidence outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond

4

his pleadings, to show that a genuine issue of material fact exists." Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987).  When ruling on a jurisdictional motion involving factual issues which also go to the merits, the moving party "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Casumpang v. Int'l Longshoremen's & Warehousemen's Union, 269 F.3d 1042, 1060-61 (9th Cir. 2001).

**II. Motion to Dismiss for Failure to State a Claim**

FRCP 12(b)(6) permits dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  Courts may also "consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  See Sprewell, 266 F.3d at 988; Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000); In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Sprewell, 266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (internal citations and quotations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Id. at 1964 (internal citations and quotations omitted). Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face." Id. at 1973.

## DISCUSSION

### I. Wrongful Suspension and Revocation of Security Clearance Claims

The first issue is whether the Court has jurisdiction over Plaintiff's wrongful suspension and revocation of security clearance claims. At its base, Plaintiff alleges that he was wrongfully suspended because Defendants improperly revoked his security clearance.

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." Block v. North Dakota, 461 U.S. 273, 287 (1983). A waiver of sovereign immunity must be unequivocal and cannot be implied. See United States v. Mitchell, 445 U.S. 535, 538 (1980). Plaintiff bears the burden of establishing the unequivocal waiver of immunity. See Holloman v. Watt, 708 F.2d 1399, 1401 (9th Cir. 1983).

The Civil Service Reform Act ("CSRA") provides specific remedies for most suspensions resulting from a revocation of security clearance. Under the CSRA, a federal employee who is suspended for more than 14 days may appeal that suspension to the

MSPB.[2]  See 5 U.S.C. §§ 7512, 7513.  If the federal employee is dissatisfied with the decision of the MSPB, he can seek review in the United States Court of Appeals for the Federal Circuit. See 5 U.S.C. § 7703(b)(1).

Alternatively, the head of an agency may suspend a federal employee without pay when he considers the action necessary in the interest of national security.  See 5 U.S.C. § 7532(a).  Under that scenario, after suspension and before removal, the federal employee is entitled to a written statement of the charges against him within 30 days of the suspension, an opportunity to respond to the charges, a hearing, a review of his case by the agency head or a designee, and a written decision of the agency head.  See 5. U.S.C. § 7532.

In enacting the CSRA, Congress intended to limit the remedies of federal employees bringing claims closely intertwined with their employment conditions.  See Lehman v. Morrissey, 779 F.2d 526 (9th Cir. 1985); S. Rep. No. 969, 95th Cong., 2d Sess. 3, 53 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 2723, 2725.

The Supreme Court has held that administrative agencies are precluded from substantively reviewing security clearance determinations.  See Dep't of Navy v. Egan, 484 U.S.

---

[2]Plaintiff alleges that he was told that he could not bring an action with the MSPB.  That argument is addressed infra at Section IV.

518 (1988) (holding that under the CSRA, a reviewing entity could not make any determination regarding the substance of the underlying security clearance determination); see also Brazil v. Dep't of Navy, 66 F.3d 193, 196 (9th Cir. 1995).  Although Egan only prohibited administrative review of security clearance decisions, it provided the basis by which the Ninth Circuit extended the prohibition to judicial review of security clearance decisions.  See Brazil v. Dep't of Navy, 66 F.3d 193, 196 (9th Cir. 1995); see also Dorfmont v. Brown, 913 F.2d 1399, 1401 (9th Cir. 1990) (holding that the district court lacked subject matter jurisdiction over revocation of security clearance claims).

       Generally, absent a statutory provision to the contrary, there is "strong presumption in favor of appellate review."  See Abbott Laboratories v. Gardner, 387 U.S. 136, 141 (1967).  However, at the core of the Egan decision is the recognition that security clearance determinations are "sensitive and inherently discretionary" exercises, entrusted by law to the executive branch of the government.  See Egan, 484 U.S. at 527-29; see also Brazil, 66 F.3d at 196.  Security clearance decisions are "highly uncertain", and dependent on the ability of the decision-maker to predict the prospective actions of the applicant.  See Brazil, 66 F.3d at 196.  As the Supreme Court explained, "[p]redictive judgment of this kind must be made by those with the necessary expertise in protecting [this type of

9

sensitive] information," rather than by "an outside nonexpert body." Egan 484 U.S. at 529.

In Dorfmont, the Ninth Circuit held that the Supreme Court's reasoning in Egan applied with equal force to federal court review of the merits of security clearance determinations. Dorfmont, 913 F.2d at 1401. Therefore, the Court is precluded from reviewing the substance of the government's security clearance determination. See Brazil, 66 F.3d at 196.

Thus, the Court lacks subject matter jurisdiction over Plaintiff's revocation of security clearance claim and as a logical result his wrongful suspension claim as well.[3]

## II. Tort Claims

The next issue is whether Plaintiff's tort claims are barred by the CSRA. Plaintiff alleges that the Court has subject-matter jurisdiction over this case under the Federal Tort Claims Act ("FTCA"), which authorizes tort claims against the government in limited circumstances. See 28 U.S.C. §§ 1346(b), 2674, 2680(h).

The Supreme Court has recognized that the CSRA "comprehensively overhauled the civil service system" and created a new framework for evaluating adverse personnel actions against

---

[3] As Plaintiff concedes, federal law provided him a means to appeal the revocation of his security clearance. Plaintiff availed himself of the procedure and he prevailed on appeal, resulting in the reinstatement of his security clearance.

federal employees. See United States v. Fausto, 484 U.S. 439, 444-45 (1988); see also Saul v. United States, 928 F.2d 829, 833 (9th Cir. 1991); Rivera, 924 F.2d at 951. As the Ninth Circuit has determined, "both the CSRA and its legislative history show that Congress did not intend state tort law to operate within the interstices of the act." See Saul 928 F.2d at 842. To permit FTCA claims to supplant the CSRA's remedial scheme would defeat the CSRA's purpose. See Rivera v. United States, 924 F.2d 948, 951 (9th Cir. 1991). Had Congress intended for federal employment determinations to be reviewable in the district courts under the FTCA, it would not have so precisely defined civil service remedies under the CSRA. See Rivera, 924 F.2d at 952. Thus, the CSRA limits federal employees challenging "prohibited personnel practices" to an administrative remedial system. See Mahtesian v. Lee, 406 F.3d 1131, 1134 (9th Cir. 2005). If the conduct Plaintiff is challenging falls within the scope of the CSRA's "prohibited personnel practices," then the CSRA's administrative procedures provide his only remedies and the federal court cannot resolve his claims under the FTCA. Id. The CSRA defines "prohibited personnel practices" as any "personnel action" taken for an improper motive by someone who has authority to take personnel actions. See 5 U.S.C. § 2302(b); see also Mahtesian, 406 F.3d at 1134; Orsay v. United States Dep't of Justice, 289 F.3d 1125, 1131 (9th Cir. 2002). "Personnel action"

includes disciplinary or corrective actions, decisions concerning pay or benefits and the like, and any other change in duties, responsibilities or working conditions.  See 5 U.S.C. § 2302(a)(2)(A)(i)-(xi); Orsay, 289 F.3d at 1131.

Here, the Plaintiff's claims of negligence, intentional and negligent infliction of emotional distress, libel and slander all arise out of the Navy's revocation of Plaintiff's security clearance and his subsequent suspension.  These acts fall within the scope of the CSRA's definition of "prohibited personnel practices."  Orsay, 289 F.3d at 1131.  Thus, the CSRA's administrative procedures are his only available remedies and the federal court cannot resolve Plaintiff's claims under the FTCA.  Id. at 1128; Saul, 928 F.2d at 835-43 (holding that the CSRA precludes both common law tort claims and constitutional law claims); Collins v. Bender, 195 F.3d 1076, 1079 (9th Cir. 1999) ("Even if no remedy were available to [Plaintiff] under the CSRA, he still could not bring [his] action if the acts complained of fell within the CSRA's confines").

Alternatively, assuming the FTCA was applicable, Plaintiff's claims would still be barred by the FTCA exceptions to governmental liability.  See 28 U.S.C. § 2680.[4]  At the

---

[4] 28 U.S.C. § 2680 provides that the government shall not waive sovereign immunity in: (a) "Any claim based upon . . . the discretionary function or duty on the part of a federal agency" or "(h) Any claim arising out of . . . libel [or] slander."

outset, Plaintiff's claims of libel and slander against the government are clearly barred by the exceptions to the FTCA. Id. at § 2680(h); Mahtesian, 406 F.3d at 1134 (holding that under the FTCA, tort actions for slander and defamation are precluded by the CSRA). Plaintiff's remaining claims are precluded by the discretionary function exception. Id. at § 2680(a). As noted supra, the Supreme Court characterized security clearance decisions as "sensitive and inherently discretionary." See Egan, 484 U.S. at 527.

In an effort to show that the FTCA is applicable and that its exceptions do not apply to this case, Plaintiff attempts to analogize his case to Mundy v. United States, 983 F.2d 950 (9th Cir. 1993). In Mundy, the plaintiff was employed by a private corporation, was denied a security clearance and was consequently fired. Id. at 952. The plaintiff claimed that the government's improper filing of an FBI report lead to his termination. Id. The Ninth Circuit held that the government waived its sovereign immunity and that the case was not barred by any exceptions to the FTCA. Id. at 953.

Plaintiff's case differs from Mundy because Plaintiff is a federal employee. Thus, while the CSRA was not applicable in Mundy, it is applicable here. See Kennedy v. U.S. Postal Service, 145 F.3d 1077, 1077 (9th Cir. 1998) ("Federal employees

13

alleging employment-related tort claims subject to the CSRA may not bring an action under the FTCA"); see also Rivera, 924 F.2d at 951-52.

Nothing in the CSRA suggests that the federal district courts have jurisdiction over Plaintiff's tort claims. See Saul, 928 F.2d 829 (holding that the CSRA is the exclusive remedy for federal civil service employee challenges to adverse employment decisions); see also Dorfmont, 913 F.2d at 1401. Thus, the Court dismisses Plaintiff's claims for negligence, intentional and negligent infliction of emotional distress, libel and slander because they are barred by the CSRA.

## II. Constitutional Claim[5]

Plaintiff argues that he has a constitutional claim under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

In Bivens, the Supreme Court held that federal officers who acted under color of law were liable for damages caused by their violation of the plaintiff's Fourth Amendment rights. 403 U.S. at 389. Finding, "no special factors counseling hesitation

---

[5] Plaintiff failed to raise this argument in either the Complaint or in the Opposition and only raises them in his Supplemental Opposition. FRCP 8(a) states that a complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff has failed to meet this standard. Still, the Court will review the merits of the claim because Defendant had an opportunity to respond in the Supplemental Memorandum.

14

in the absence of affirmative action by Congress," the Bivens Court adopted the rule that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, courts may use any available remedy to make good the wrong done." Id. at 396 (internal quotations and citations omitted).

Since Bivens, the Ninth Circuit has conclusively held that "the CSRA precludes even those Bivens claims for which the [CSRA] provides no alternative remedy." Saul, 928 F.2d at 840. In addition, the Ninth Circuit held that the CSRA is a "special factor" counseling against recognition of Bivens-type claims. Id. Thus, because the CSRA applies to Plaintiff's claims, he is precluded from arguing that he is entitled to Bivens-type remedies.

**III. Estoppel Claim**

Alternatively, Plaintiff seeks to invoke the doctrine of equitable estoppel as a basis for jurisdiction. To establish grounds for equitable estoppel against the government, Plaintiff must first demonstrate that the four traditional elements of equitable estoppel are met. See United States v. Gamboa-Cardenas, 508 F.3d 491, 502 (9th Cir. 2007). Those elements are: "(1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so

15

intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct." Id. (quoting United States v. Hemmen, 51 F.3d 883, 892 (9th Cir. 1995)); Watkins v. United States Army, 875 F.2d 699, 709 (9th Cir. 1989) (en banc), cert. denied, 498 U.S. 957 (1990).  A party seeking to estop the government must establish two additional factors: (1) "the government has engaged in affirmative misconduct going beyond mere negligence" and (2) "the government's act will cause a serious injustice and the imposition of estoppel will not unduly harm the public interest." Pauly v. U.S. Dep't of Agric., 348 F.3d 1143, 1149 (9th Cir. 2003) (quotation marks omitted).  The Ninth Circuit has defined affirmative misconduct as a "deliberate lie" or "a pattern of false promises." Mukherjee v. I.N.S., 793 F.2d 1006, 1009 (9th Cir. 1986).

Plaintiff has not alleged facts sufficient to sustain a claim of estoppel against the government.  Nothing in the Complaint suggests that the Navy of the government engaged in misconduct that rises to the level of a "deliberate lie" or "a pattern of false promises." Id.  The Court has not found, and Plaintiff has not cited, a single statute authorizing recovery for estoppel claims in this situation.  Even still, if Plaintiff's claims would survive under a theory of equitable estoppel, which they do not, Plaintiff would be left without a

monetary remedy because the Appropriations Clause of the United States Constitution limits the payment of money from the Treasury to that which is authorized by statute.  See U.S. Const. art. I § 9 cl. 7.

**IV. Potential Remedies with the MSPB[6]**

    **A. The MSPB has the Authority to Toll the Statute of Limitations**

A federal employee seeking to challenge an adverse employment decision must typically do so within thirty days of the effective date of the action.  See 5 C.F.R. § 1201.22(b).  The MSPB may waive this temporal limitation upon Plaintiff's showing of "good cause."  See 5 U.S.C. § 1201.12.  The MSPB has held that the factors it will consider in determining whether a party has good cause for missing a filing deadline are: length of the delay; whether the employee was notified of the time limit or was otherwise aware of it; existence of circumstances beyond the control of the employee which affected his ability to comply with the time limit; the degree to which negligence by the employee has been shown to be present or absent; circumstances that show to the extent any neglect is involved, that it was excusable; a showing of unavoidable casualty or misfortune; and extent and

---

[6] In their Supplemental Memorandum, Defendants, without conceding their defenses, suggest that Plaintiff may have "potentially viable claims with the MSPB."  See Supplemental Memorandum at 2.

17

nature of prejudice to the agency which would result from waiver of the time limit.  See Alonzo v. Dep't of Air Force, 4 M.S.P.B 262, 264 (1980).

Here, if Plaintiff can establish that he was deliberately or inadvertently misinformed about the MSPB procedural process and that he reasonably relied on that information, he may be able to establish that he had "good cause" for missing the filing deadline.

### B.   MSPB's Authority to Consider Security Clearance Determinations

The Supreme Court has noted the MSPB does not have authority to review the substance of the underlying decision to suspend a security clearance.  See Egan, 484 U.S. at 527-34. However, the MSPB has considered whether the procedures an agency uses in suspending an employee afforded that employee minimal due process.  Id. at 529; see also Cheney v. Dep't of Justice, 479 F.3d 1343 (Fed. Cir. 2007) (holding that revocation of security clearance and resulting suspension were invalid because the plaintiff was not afforded the requisite due process under 5 U.S.C. § 7513); Alston v. Dep't of Navy, 48 M.S.P.R. 694, 697 (1991); Weissberger v. United States Information Agency, 39 M.S.P.R. 370, 373-74 (1988) (holding that the MSPB has the power to review whether an agency provided an employee with minimal due process in revoking security clearance).

Assuming Plaintiff can overcome the hurdles presented

18

by the statute of limitations issue, he could challenge that his due process rights were violated when he was informed that he could not file his case with the MSPB.  If the MSPB agrees, it then has the power to award Plaintiff the relief he seeks.  See Cheney, 479 F.3d at 1353 (awarding the plaintiff back pay for the period of improper suspension).

### C. The Court Lacks the Authority to Direct the MSPB to Toll the Statute of Limitations

Plaintiff contends that this Court has authority to order the MSPB to toll the statute of limitations to allow Plaintiff to file his claim.  Plaintiff argues that the Court should infer that it has authority over the MSPB from "inferences of intent drawn from the statutory scheme as a whole."  See Supplemental Opposition at 14.  However, the statutes governing the MSPB suggest that this Court has no power to direct the MSPB to toll its statute of limitations.  5 U.S.C. § 7703 states in relevant part:

> "Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the [MSPB] may obtain judicial review of the order or decision . . . a petition to review a final order or final decision of the [MSPB] shall be filed in the United States Court of Appeals for the Federal Circuit."

Thus, if the MSPB were to find Plaintiff's claim untimely, Plaintiff could appeal that determination or order to the Federal Circuit.  Even if this Court had appellate

19

jurisdiction over the MSPB, which the Court finds it does not, it would be imprudent to exercise that jurisdiction before the MSPB had an opportunity to consider the merits of Plaintiff's arguments.

## CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss is GRANTED because the Court lacks subject matter jurisdiction over the claims alleged in the Complaint. Plaintiff's request for leave to amend the Complaint is DENIED because any amendment would be futile.  See Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002) (citing Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 247 (9th Cir. 1990)).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 15, 2008.



_____
Alan C. Kay
Sr. United States District Judge

Barefoot v. Dep't of Navy, Civ. No. 07-00456 ACK-KSC, ORDER GRANTING DEFENDANTS' MOTION TO DISMISS.